UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| MICHAEL PHILLIPS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | NO. 7:06-CV-127-AH |
| | § | |
| MICHAEL ASTRUE,[1] | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Pursuant to the written consent of the parties to proceed before a United States Magistrate Judge and the District Court's transfer order filed on November 1, 2006, in accordance with the provisions of 28 U.S.C. § 636(b), came on to be considered Plaintiff Mike Phillips' action brought under 42 U.S.C. § 405(g) seeking judicial review of Defendant's denial of Plaintiff's application for disability insurance payments under Subchapter II of the Social Security Act, 42 U.S.C. § 401 *et seq*.

Procedural History: On September 11, 2000, Plaintiff filed an application for disability insurance benefits alleging disability due to Marfan's syndrome, aortic valve replacement surgery and kidney stones. (Administrative Record 68-70, 105 [Hereinafter Tr.].)

The Administrative Law Judge ("ALJ") conducted a hearing on May 8, 2002. (Tr. 836-872.) On June 28, 2002, the ALJ denied Plaintiff's request for disability insurance benefits, finding that he was not disabled because he had the residual functional capacity ("RFC") to

---

[1] Effective February 12, 2007, Michael J. Astrue was named the Commissioner of Social Security. The caption is being changed pursuant to Fed. R. Civ. P. 25(d).

perform a limited range of light work including the jobs of assembler small level II, electronic worker and assembler bench. (Tr. 17-25.) Plaintiff timely requested a review of the ALJ's decision by the Appeals Council, and on October 11, 2002, the Appeals Council entered an order vacating the final decision of the Commissioner and remanding Plaintiff's claim to the Commissioner for additional administrative proceedings. (Tr. 481-85.) The Appeals Council found that the ALJ's decision was not supported by substantial evidence because he: (1) formulated Plaintiff's RFC without conducting a function-by-function assessment of his ability to perform work-related physical and mental activities and did not provide a sufficient rationale with specific references to evidence in the record in support of the assessed limitations, (2) did not properly evaluate the 2002 opinion of Plaintiff's treating physician, Dr. Layne Collums, M.D., in which he imposed limitations that were inconsistent with the ALJ's RFC determination, (3) did not provide an adequate rationale for his assessment of the severity of Plaintiff's mental impairments and any functional limitations that result from his impairments, and (4) used an improper rule from the Medical-Vocational Guidelines ("the Grids") as his framework for deciding that Plaintiff was not disabled. (Tr. 481-85.)

The ALJ conducted a second hearing on January 25, 2006. (Tr. 873-897). On January 27, 2006, he denied Mr. Phillips' application for disability benefits, finding that he had the RFC to perform a significant range of sedentary work and that there were a significant number of jobs in the national economy that he could perform. (Tr. 29-35.) After receiving notice of the unfavorable decision, Plaintiff requested review of the ALJ's decision by the Appeals Council, but on June 2, 2006, the Appeals Council denied Plaintiff's request. (Tr. 8-10.) Therefore, the ALJ's decision became the Commissioner's final decision for purposes of judicial review. *See*

*Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002).

Plaintiff filed his federal complaint on August 1, 2006. Defendant filed an answer on September 28, 2006. On October 3, 2006, prior to ordering transfer of the case, the District Court filed its order requiring joint submission of the parties' summary judgment briefs. On October 16, 2006, Plaintiff filed an amended complaint and on October 23, 2006, Defendant filed an answer to Plaintiff's amended complaint. In accordance with the joint submission order, Plaintiff served his brief on Defendant's council on January 11, 2007. The Commissioner did not serve a responsive brief to the issues raised by Plaintiff, but rather filed a motion to remand on January 18, 2007, pursuant to sentence four of 42 U.S.C. § 405(g). Plaintiff filed a response to the motion to remand on February 7, 2007, followed by Defendant's reply on March 2, 2007.

<u>Standard of Review–Social Security Claims</u>: When reviewing an ALJ's decision to deny benefits, the scope of judicial review is limited to a determination of: (1) whether the ALJ's decision is supported by substantial evidence in the record and (2) whether the proper legal standards were applied in evaluating the evidence. *Castillo v. Barnhart*, 325 F.3d 550, 551 (5th Cir. 2003) (quoting *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990)). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa*, 895 F.2d at 1021-22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). In determining whether substantial evidence exists, the court reviews the entire record, but does not reweigh the evidence, retry the issues, or substitute its own judgment. *Id*. at 1022 (citations omitted). Where the Commissioner's findings of fact are supported by substantial evidence, they are conclusive. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Richardson v. Perales*, 402 U.S.

3

389, 390, 91 S. Ct. 1420, 1422 (1971)).

Discussion:

To prevail on a claim for disability insurance benefits, a claimant bears the burden of establishing that he or she is disabled, which is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505. Substantial gainful activity is defined as "work that [i]nvolves doing significant and productive physical or mental duties; and [i]s done (or intended) for pay or profit." § 404.1510.

The ALJ uses a sequential five-step inquiry to determine whether a claimant is disabled. *See* § 404.1520. Under the first four steps, a claimant has the burden of proving that his disability prevents him from performing his past relevant work, but under the fifth step, the burden shifts to the Commissioner to prove that there is other substantial gainful activity that the claimant can perform. *See*, *e.g.*, *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 (1987); *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989). This burden may be satisfied either by reference to the Medical-Vocational Guidelines ("Grid Rules") of the regulations, *see* 20 C.F.R. Pt. 404, Subpt. P, App. 2, or by expert vocational testimony or other similar evidence. *See*, *e.g.*, *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

In this case, the ALJ proceeded to step five and determined that Mr. Phillips retained the capacity to perform a significant range of sedentary work. (Tr. 34-35.) He therefore denied Plaintiff's request for disability insurance benefits. (Tr. 35.)

Plaintiff argues, and Defendant concedes, that the ALJ did not properly evaluate the

4

treating physician evidence in the record as it related to Plaintiff's RFC.  *See* Def.'s Reply at 2.  Under the regulations, the medical opinion of an examining source is generally given more weight than the opinion of a nonexamining source.  § 404.1527(d)(1).  Where the examining source is a "treating source," any opinion regarding the nature and severity of a claimant's impairment should be given controlling weight if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques.  § 404.1527(d)(2); *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985).  However, an ALJ may decline to give a treating physician's opinion controlling weight or may reject the opinion in its entirety for "good cause."  *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994).  The Fifth Circuit has defined "good cause" to include instances where the treating physician's opinion is brief and conclusory, where it is not supported by medically acceptable clinical and laboratory diagnostic techniques and where it is otherwise unsupported by the evidence.  *Id.*  In general, an ALJ who declines to give controlling weight to a treating physician's opinion should evaluate the weight to be given the opinion using all of the relevant factors set forth in section 404.1527(d).  *See Walker v. Barnhart*, 158 Fed. Appx. 534, 535, 2005 WL 3340251, at *1 (5th Cir. 2005) (citing *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000)).

During his discussion of Plaintiff's RFC, the ALJ stated that he did not assign "significant weight" to the medical source statement prepared on April 19, 2002, by Plaintiff's treating physician, Dr. Layne Collums, M.D., (Tr. 453-56).  In his statement, Dr. Collums opined that Plaintiff's physical limitations included the inability to walk for more than one block without rest and the inability to stand for more than 30 minutes at a time.  (Tr. 454.)  He further noted that Plaintiff would sometimes need to lie down and rest for 15-20 minutes during the

work day and frequently suffered from pain that would interfere with his ability to concentrate. (Tr. 454-55.)

Although the ALJ gave three reasons for declining to give controlling weight to Dr. Collums' medical opinion, none of his reasons, analyzed alone or in combination, are supported by substantial evidence. The ALJ's first basis–that Dr. Collums had not seen Plaintiff in over eighteen months when the opinion was issued–is not a permissible reason in itself for disregarding the opinion. *See Henderson v. Chater*, No. 94-36069, 1996 WL 88077, at *1 (9th Cir. Feb. 29, 1996) (holding that it was improper for an ALJ to base his rejection of a treating physician's opinion on the fact that the physician had not examined the plaintiff for a year prior to rendering his opinion); *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (noting that the opinions of treating physicians often "reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time') (citation omitted).

Neither was it proper for the ALJ to decline to give controlling weight to Dr. Collums' opinion based on the assumption that "the doctor lacked familiarity with the claimant's medical condition and high activity level, obviously." (Tr. 32.) While "high activity level" is an apparent reference to Plaintiff's testimony that he manufactured and sold methamphetamine for approximately one year between January 2002 and January 2003, (Tr. 878), the ALJ did not explain how Plaintiff's ability to participate in an illegal business was inconsistent with the physical limitations identified by Dr. Collums. Nor did the ALJ discuss Plaintiff's testimony that he was unable to continuously operate his illegal business due to several heart-related hospitalizations. (Tr. 886); *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) (holding that an ALJ "must consider all the record evidence and cannot 'pick and choose' only the evidence that

6

supports his position") (citations omitted).

The ALJ further found that Dr. Collum's opinion was not entitled to substantial weight because it conflicted with other medical evidence in the record that supported a less restrictive assessment of Plaintiff's functional capacity.  However, after reviewing the evidence cited by the ALJ, the undersigned finds that the he "succumb[ed] to the temptation to play doctor and make [his] own independent medical findings," *see Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996), as the records themselves do not support his broad conclusions.  He interpreted a cardiovascular report signed by a technician on July 11, 2003, (Tr. 531), to be inconsistent with a "seriously diseased heart," even though the report does not contain any conclusions regarding the nature of Plaintiff's heart condition, especially as it relates to his diagnoses of Marfan's syndrome and tachycardia.  Likewise, the ALJ found that Plaintiff's condition was "stable" based on a medical report prepared on March 26, 2003, by Dr. Lawrence Small, M.D., (Tr. 592-95.), despite the fact that Dr. Small did not expressly indicate that Plaintiff's heart impairment was "stable" and, to the contrary, diagnosed him with wide complex tachycardia with left axis deviation and recommended further diagnostic testing.

The ALJ also declined to "adopt" the psychiatric diagnosis given to Plaintiff by Dr. Art Smith, on October 2, 2001, (Tr. 175-77), because: (1) he was "clearly unaware of the claimant's high functional level at that time," and (2) "objective proof of mental impairment is remarkably absent from the claimant's record once he stopped substance abuse." (Tr. 32.)  The ALJ's first reason for failing to give controlling weight to Dr. Smith's opinion is not valid, because, as discussed above, he failed to fully discuss Mr. Phillips' ability to participate in illegal business activity.  Furthermore, the ALJ's claim that there was no evidence in the record to substantiate

Plaintiff's claim of an ongoing mental impairment is contradicted by the record.  As recently as March 2003, Plaintiff was diagnosed as schizophrenic and was reporting mood swings, depression and auditory hallucinations.[2]  (Tr. 522-23.)

Upon remand, the ALJ is directed to evaluate Plaintiff's RFC and the opinions of Plaintiff's treating physicians in accordance with the Social Security regulations and the law of this circuit.  In the process of evaluating Plaintiff's RFC, the ALJ may find it necessary to: (1) re-contact Drs. Collums and Smith to determine the bases for their opinions, (2) re-contact other treatment providers in order to fill any gaps in Plaintiff's medical records, (3) obtain a medical consultative examination, including an analysis of Plaintiff's RFC, (4) obtain a psychological consultative examination, including an analysis of Plaintiff's RFC, and (5) obtain medical expert testimony.  The ALJ is encouraged to gather all relevant information necessary in making a fully-informed final decision.

Plaintiff also argues that the ALJ erred at step five by relying exclusively on the Grid Rules despite finding that Plaintiff's RFC was limited by non-exertional impairments and by failing to identify specific jobs existing in the economy that Plaintiff was capable of performing. Although an ALJ may reference the Grid Rules to support his step five determination "when it is established that a claimant suffers only from exertional impairments, or that the claimant's nonexertional impairments do not significantly affect his residual functional capacity," the ALJ must solicit vocational or other competent expert testimony in all other instances.  *Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999).  Moreover, regardless of whether an ALJ relies on the

---

[2] Although Defendant disagrees with Plaintiff's argument attacking the legal standard which the ALJ applied in evaluating his mental impairments, the Commissioner agreed that the evaluation of evidence was inadequate.  Def.'s Reply at 4.

Grid Rules or on expert vocational testimony, he must identify specific jobs that an individual with the claimant's characteristics could perform given his or her physical and/or mental impairments.  *See*, *e.g.*, *Anschutz v. Barnhart*, 212 F. Supp. 2d 1077, 1086 (S.D. Iowa 2002); *Barbosa v. Schweiker*, 549 F. Supp. 773, 777 (D.C.N.Y. 1982).

In this case, the ALJ called a vocational expert ("VE") to testify at the administrative hearing.  However, the ALJ never asked the VE to identify any jobs that an individual with Plaintiff's characteristics could perform.  Consequently, although the ALJ relied, at least in part, on the VE's testimony to support his step five decision, the testimony was not sufficient to satisfy the Commissioner's burden at step five.  Therefore, upon remand, the ALJ is directed to obtain the testimony of a VE or other competent expert identifying specific jobs, if any, that a person with Plaintiff's limitations would be capable of performing.

It is therefore ordered that the decision of the Commissioner is reversed and the claim is remanded to the Commissioner for action consistent with this opinion.

SIGNED this 14th day of May, 2007.

*[signature: Wm. F. Sanderson, Jr.]*

———————————————————
Wm. F. Sanderson Jr.
UNITED STATES MAGISTRATE JUDGE